## Case No. 16,195.

UNITED STATES v. ROSE et al.

[Hoff. Land Cas. 197.] [1]

District Court, N. D. California. Dec. Term, 1856.[2]

MEXICAN LAND GRANT—SUTTER GENERAL TITLE—ABANDONMENT.

[1. One claiming under the "general title" of Micheltorena has merely to show that he is one of those in whose favor General Sutter reported, and need not show that he received a copy of the grant.]

[2. Where one who had purchased land, and had built a house thereon, obtained a grant from the government of adjoining land, his continued occupancy of the former tract extended to the latter, so as to rebut any presumption of abandonment of the grant.]

[3. The fact that claimant was recognized by General Sutter as one of those entitled to the benefits of the "general title" of Micheltorena, which was in terms restricted to "citizens," and that Sutter delivered a copy of the grant to him as such, is sufficient, when accompanied by the oath of the claimant to that effect, to show that he was within the class of "citizens."]

1 [Reported by Numa Hubert, Esq., and here reprinted by permission.]
2 [Reversed in 23 How. (64 U. S.) 262.]

[Claim by John Rose and others for the Rancho de Yuba, comprising six leagues of land in Yuba county: confirmed by the board, and appeal taken by the United States.]

William Blanding, U. S. Atty.

Thornton & Williams, for appellees.

HOFFMAN, District Judge. The claim in this case is founded on what is known as the "general title" of Micheltorena. It has already, after full consideration, been determined in this court that that grant was sufficient to convey a valid title to those in whose favor it issued. The only points now open to controversy in this case are therefore: (1) Whether the alleged grantee was one of those persons for whose benefit the grant was made. (2) Has the right (if any) acquired by him been forfeited by such unreasonable neglect to perform the conditions of occupation and cultivation as to authorize the presumption that he had abandoned his land.

First, was he one of the grantees under the original title. The grant of Micheltorena bears date December 22, 1844. It recites: "That the supreme government not being able, on account of other occupations, to extend one by one the respective titles to all the citizens who have petitioned for lands with favorable reports from Señor Don A. Sutter, by these letters grants unto them and their families the lands described in their petitions and diseños to all and each one who has obtained the favorable report of Señor Sutter, without any one being able to question their ownership; a copy of this given to them hereafter by Señor Sutter serving them as a formal title, with which they shall present themselves to this government for the purpose of delivering to them the title in due form and upon paper of the corresponding seal. And for the testimony thereof at all times, I give this present document, which shall be acknowledged and respected by all the civil and military authorities of the Mexican nation in this and all other departments. (Signed) Micheltorena." It having been decided that this grant passed a title to the persons therein referred to as fully and effectually as if they had individually been named in it or had received their separate titles, the only question that remains is, was the claimant one of those who had petitioned the government, and had obtained a favorable report from Señor Sutter? Of this, the most satisfactory evidence would undoubtedly be the production of a copy of the grant delivered to him by Sutter in obedience to the direction contained in it. But this, though perhaps the best, is not the only evidence which could establish the fact that the claimant was one of the intended grantees. If he could show that he had petitioned for the land, and that he had obtained the favorable report of General Sutter, it would clearly be enough to establish his right under the grant, even though Sutter may have neglected or refused to give him the evidence of his title which he was directed to furnish. The fact,

however, that such a copy was not delivered to the party, would be a circumstance requiring explanation; for it has not, as yet, been suggested to this court that Sutter neglected or refused to comply with the directions of the general title in this respect, when applied to by any one entitled under it.

In the case at bar, it is alleged that a copy of the title was duly given to the grantee; that it, with other papers, was lost by him while fording the Sacramento river; that on being made acquainted with the loss, Captain Sutter furnished a second copy, which was sent by the grantee to Monterey for the purpose of obtaining the approval of the assembly, but that he has never been able to recover it, or to discover what had been done with it. General Sutter, who was sworn on the part of the claimants, testified that John Smith petitioned the governor for six square leagues of land, accompanying his petition by a map drawn, as he understood, by John Bidwell. The expediente with the usual decree for information was acted upon by the witness, and a favorable report made before the twenty-second of December, 1844. The witness also stated that he remembered having given to Smith a copy of the original title, as he was entitled to have it; that subsequently he was informed and fully satisfied that in the spring of 1845, Smith lost all his documentary evidence or expediente in this case. On his cross-examination he stated that after the petition came back from Monterey for his report he examined it in the presence of Bidwell, who wrote it, and of Smith, the grantee. Major Bidwell confirms the testimony of General Sutter, and states that he saw the latter deliver a copy of the general title to Smith; and that subsequently he prepared a petition to General Sutter, soliciting another copy of the general title, as the first had been lost with the accompanying documents; and that General Sutter knowing that fact, delivered a second copy as requested. The witness also states that the land claimed in this case was granted to Smith by the general title referred to; and he identifies a map as made by himself in 1844, on which the land now claimed is marked as the "Rancho de Yuba." General Sutter was re-examined in this court. His recollection when making his last deposition seems more uncertain and confused than when his testimony was first taken. He repeats, however, his former statement as to the facts we are considering, viz. that Smith applied for the land; that the petition was referred to him; that he reported favorably upon it; that he delivered a copy of the general title to Smith; and that on its being proved to him "by many persons" that the first copy was lost, he gave or sent to Smith a second copy. When asked how the loss was proved, he replied: "When a man like Bidwell told me anything, I believed it like the Gospel."

There can, I think, be no room for doubt under this testimony that Smith was one of those in whose favor the general title issued.

His own testimony has been taken to prove the loss of the copy delivered to him and of the other documents. It is objected that it has since appeared that he has or pretends to some interest in the land, notwithstanding his conveyance to the present claimants. A bill of complaint is exhibited in which he prays that that sale may be set aside on the ground of fraud. The objection was not taken, however, at the time he testified, and besides, his own evidence as to the loss of the documents would clearly be admissible, notwithstanding his interest. His account is corroborated by the testimony of Sutter and Bidwell—witnesses of whom it may be observed that they are of a class, unfortunately too small, upon whose veracity this court can place reliance. It is not to be forgotten that the production of the copy of the general title is only important as showing that the party producing it was one of those intended to be benefited by the original. The interest passed by virtue of the original; and it passed to those persons who are referred to in it, though they are not named.

The only inquiry, therefore is, was the claimant one of those persons? To establish this, no secondary evidence of the contents of the copy delivered to him is necessary. It is the fact that he was one of those in whose favor Sutter had reported which fixes his rights, and identifies him as one of the intended grantees. That he did petition for the land; that Sutter reported favorably on his petition; that a copy of the original grant was given to him at the time, as one of the grantees, is clearly proved. His rights are, therefore, established, whatever may have become of the copy delivered to him—that copy being in no sense the instrument which conveyed the title, but only a means of showing by its production what other testimony has sufficiently proved. But in order to ascertain what lands were granted, reference must be had to his petition; for it was the tract therein solicited which the governor granted, and secondary evidence of the contents of the petition must, of course, in the absence of the original, be resorted to.

That the petition and accompanying documents were lost is, I think, sufficiently shown, not only by Smith's own testimony, but by that of Sutter and Bidwell, and still more conclusively by the fact that a second copy of the grant was delivered to the grantee—a proceeding absurd and without a motive, unless the first had been lost. It is suggested that due diligence has not been shown to obtain this second copy. But the only document as to which secondary evidence is important is the petition, and of this it does not appear that any copy was made. The petition not being produced, the fact that the land now claimed was that solicited in it must be established by other testimony. Major Bidwell testifies that he is well acquainted with the land, and he states its boundaries, and that it was granted to

Smith by Micheltorena. A map is also identified by him as made by himself in 1844, on which the land now claimed is delineated under the name of "Rancho de Yuba." General Sutter testifies that John Smith petitioned Governor Micheltorena for six leagues of land, accompanying his petition with a map or diseño, drawn, as witness understood, by Major Bidwell. Smith (the witness says) was in possession by his authority of this land—the boundaries of which correspond with the map referred to in the deposition of Bidwell. The witness on his cross-examination says that he examined the original diseño when the expediente was referred to him for his "informe;" that he was well acquainted with the ground, and that the boundaries as testified to by Major Bidwell, and delineated on the map referred to by him correspond with those on the diseño which accompanied the petition. When subsequently examined, the witness declared his inability to specify the boundaries of the land petitioned for, or to give a particular description of the diseño which accompanied the petition. He even states that he cannot recollect the quantity of land applied for by Smith.

It is not very easy to reconcile the accurate recollection exhibited in the first deposition of General Sutter with the confusion and forgetfulness shown in his last. Perhaps the lapse of time may in some degree have impaired his memory, though it is strange that two years should have so completely obliterated the recollection of events which in 1855 he so freshly remembered. If we were compelled to rely upon General Sutter's testimony alone to ascertain the land which Smith petitioned for, and which was granted to him, we should, perhaps, be obliged to reject the claim. The testimony of Bidwell, however, is explicit, and identifies the land granted to Smith. Smith himself swears that he petitioned for and obtained the Rancho de Yuba; and that he claimed to own it is evident from the testimony introduced on the part of the United States; for in 1848, he sold out to Nye and Foster, from whom the claimants derive title, his interest in the land now in controversy. The fact that so soon after the acquisition of the country he claimed to own this land under the title derived from Micheltorena, shows that the claim now urged is no recent invention, and corroborates the testimony of Sutter and Bidwell that the tract now claimed was that originally petitioned for and granted to him. Upon the whole, I think it sufficiently proved, not only that Smith was one of the intended grantees under the general title, but that the land petitioned for by him, and by that instrument granted, was the Rancho de Yuba claimed in this suit.

The next inquiry is, was the vested interest so acquired forfeited during the existence of the former government by such unreasonable neglect to perform the conditions

as to justify the presumption that the grantee had abandoned his grant. The evidence shows that before obtaining his grant, Smith had purchased from General Sutter one league of land, and had built a house upon it. The land he solicited immediately adjoined this tract, and it would seem from the proofs, that the second house built by Smith was also within the limits of his purchase, and not within those of his grant. This is certainly the case if the boundaries of Sutter's grant be located according to the preliminary survey made of it. It may be admitted, therefore, that Smith never built a house within the limits of the six leagues granted; but that he resided in a house built on the land purchased by him which immediately adjoined it. His cattle, however, ranged over the large tract, and he appears to have claimed and been recognized as possessing both tracts, until 1848, when he sold out to Nye and Foster. It seems to me that this occupation was sufficient to satisfy the Mexican law. When a sobrante or surplus was granted to one who had previously obtained a grant of a portion of the land inclosed within natural boundaries, it was not expected that he should build a second house and reside on both tracts at once. So also where an augmentation or additional grant was made, the additional quantity was added to that first granted, and both formed one whole. If Smith then was residing and had built a house upon the one league purchased, and subsequently obtained from the government an additional six leagues immediately adjoining it, he must be considered from that time as occupying the whole seven leagues, or the whole tract, upon a portion of which he continued to reside. Certainly, such an occupation repels all idea that he had abandoned his grant. And it is only when the neglect to fulfill the conditions has been so unreasonable as to justify the presumption of abandonment, that we are authorized, under the principles laid down by the supreme court, to declare his claim forfeited.

It is further objected that the general title only grants to those citizens who have obtained the favorable report of General Sutter the lands solicited by them respectively; and that it is not shown that Smith was a citizen. It appears that Smith is a native of Canada or New Brunswick; that he came to this country in 1835. He swears himself that he was naturalized, but he does not produce his papers or give secondary evidence of their contents. They were lost with the other documents. It appears, however, that General Sutter delivered to him a copy of the title as one of those referred to in it. General Sutter was at that time military commandant of the frontier, and exercised civil jurisdiction in that portion of Upper California. He was directed to deliver a copy of the title to a certain class of persons described in it. It is to be presumed that as an officer of the government he did his duty, and acted within the limits of his authority. The fact, therefore, that Smith was recognized by him as one of those entitled to receive a copy of the grant, and that he delivered a copy to him as such, should, when corroborated by the oath of Smith himself, be received as sufficient to bring him within the class of persons in whose favor the grant issued.

The claim was confirmed by the board, and I see no reason to reverse their decision.

[The case was taken, on an appeal, to the supreme court, where the judgment of the district court was reversed, and the cause remanded, with directions to dismiss the petition. 23 How. (64 U. S.) 262.]